IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW HAHN and HEATHER HAHN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 16 cv 6908 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| ANSELMO LINDBERG OLIVER LLC, | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Andrew and Heather Hahn, bring this case under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*, and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/c, against defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Anselmo Lindberg Oliver LLC ("ALO"). Defendants separately move to dismiss. For the following reasons, their motions are granted.

## BACKGROUND

On January 3, 2002, plaintiff Heather Hahn, then unmarried and known by her maiden name, Heather Johnson, executed a mortgage secured by her home, located at 305 North Street in Mazon, Illinois ("the Mazon property"). On February 10, 2012, after Ms. Hahn fell behind in her payments, defendant Wells Fargo filed a Complaint for Foreclosure in the Circuit Court of Grundy County, Illinois, naming Ms. Hahn and her husband, plaintiff Andrew Hahn, as defendants. Among the relief sought was foreclosure of the mortgage and "a personal deficiency judgment against . . . Heather Johnson only, if sought." (Wells Fargo Mot. to Dismiss, Ex. 1 at

1

3.)[1]  On July 20, 2012, Ms. Hahn filed for Chapter 13 bankruptcy. ALO, a law firm, filed an appearance for Wells Fargo in the bankruptcy court. On October 25, 2012, the bankruptcy court confirmed the Chapter 13 plan of reorganization. However, in 2014 Ms. Hahn began to fall behind in her payments again, and on March 17, 2015, Wells Fargo moved for relief from the automatic stay. Mot. for Relief from Automatic Stay, *In re Heather D. Hahn*, No. 12-28760 (Bankr. N.D. Ill. March 17, 2015), ECF No. 58. The motion was granted on March 27, 2015. On October 6, 2015, the trustee moved to dismiss the case because Ms. Hahn had missed plan payments. The bankruptcy court granted the motion on October 23, 2015. In November 2015, Wells Fargo resumed litigating the foreclosure case against Ms. Hahn.

On September 2, 2015, Ms. Hahn purportedly transferred her interest in the Mazon property to herself and Mr. Hahn by quitclaim deed. A week later, on September 9, 2015, Mr. Hahn filed a Chapter 13 bankruptcy petition (Case No. 15-30730), listing defendants as creditors. He filed a proposed plan of reorganization that included monthly payments to Wells Fargo to make up the mortgage arrearage. On February 5, 2016, the bankruptcy court approved Mr. Hahn's Chapter 13 plan.

Defendants had notice of Mr. Hahn's bankruptcy, but even so, they proceeded with the foreclosure action, with ALO representing Wells Fargo in that case throughout the remainder of 2015 and early 2016. On February 10, 2016, the Illinois court granted summary judgment for Wells Fargo.

On June 30, 2016, plaintiffs filed this action. Their complaint consists of two counts. In Count I, they assert violations of the FDCPA against ALO for making misrepresentations concerning uncollectible debts and unfairly attempt to collect a legally uncollectible debt,

---

[1] In deciding the instant motions to dismiss, this Court considers the allegations of the complaint, documents attached to the complaint and documents referenced therein, as well as documents subject to judicial notice, such as court filings.

pursuant to 15 U.S.C. §§ 1692e(2), 1692e(1), and 1692f, by litigating the foreclosure action. In Count II, they assert violations of the ICFA against Wells Fargo for its unfair or deceptive conduct in proceeding with the foreclosure action even after Mr. Hahn filed his bankruptcy petition.

## ANALYSIS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## I. FDCPA CLAIM AGAINST ALO

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)). Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In particular, 15 U.S.C. § 1692e(2) prohibits the "false representation of . . . the character, amount or legal status of any debt," and section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." Further, 15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt."[2]

Plaintiffs contend that ALO violated the above provisions by litigating the foreclosure case even after Mr. Hahn filed his bankruptcy petition, at which point ALO should have known that the foreclosure action was automatically stayed under sections 362 and 1301 of the Bankruptcy Code. ALO responds that the foreclosure action was not an attempt to collect a debt from Mr. Hahn at all, so ALO did not violate the FDCPA by litigating the foreclosure action while Mr. Hahn's bankruptcy was pending.

The FDCPA defines debt as an "obligation . . . of a consumer to pay money," § 1692a(5), and it imposes liability only when an entity is attempting to collect "debt," *see* §§ 1692e, 1692f;

---

[2] 15 U.S.C. § 1692f has numerous subsections that describe specific conduct that violates the statute, "[w]ithout limiting the general application" of the prohibition against any unfair or unconscionable means of collecting a debt. Plaintiffs do not cite to any subsection, apparently relying instead on the "general application" of section 1692f. Notably, one of the subsections, §1692f(6), specifically mentions enforcing security interests, but subsection 1692f(6) applies only to "nonjudicial" means of enforcing the security interest. See Theodore Eisenberg, 1-8 *Debtor-Creditor Law* § 8.02 ("Because the 15 U.S.C. section 1692f(6) proscriptions only apply if nonjudicial means are being used, security interest enforcers are constrained by this phrase only if they resort to self-help repossession, nonjudicial foreclosure, or other out-of-court enforcement tactics as opposed to replevin or similar judicial proceedings.")

*Ho v. ReconTrust Co., NA*, 840 F.3d 618, 621 (9th Cir. 2016). Courts across the nation are split on the issue of whether an attempt to enforce a security interest is an attempt to collect a debt to which the FDCPA applies. "It appears that the majority view is that mortgage foreclosure is not debt collection within the meaning of the FDCPA." *Aurora Loan Servs., LLC v. Kmiecik*, 992 N.E.2d 125, 133 (Ill. App. Ct. 2013) (collecting cases); *see Boyd v. J.E. Robert Co.*, No. 05-CV-2455, 2013 WL 5436969, at *9-11 (E.D.N.Y. Sept. 27, 2013) (citing cases), *aff'd on other grounds*, 765 F.3d 123 (2d Cir. 2014). The minority view—but the view of the majority of federal appellate courts that have considered the question—is that "the act of foreclosing on a mortgage is the collection of a debt according to the FDCPA." *Aurora Loan Servs.*, 992 N.E.2d at 134; *see Ho*, 840 F.3d at 627 (Korman, J., dissenting) (citing cases). The Seventh Circuit has not yet weighed in on the question.

In a recent opinion authored by Judge Kozinski, the Ninth Circuit explained that, "for the purposes of the FDCPA, the word 'debt' is synonymous with 'money,'" and an attempt to enforce a security interest is not, by itself, an attempt to collect money but an attempt to obtain property; therefore, an attempt to enforce a security interest such as foreclosing on a mortgage is not an attempt to collect a "debt" within the meaning of the FDCPA. *Ho*, 840 F.3d at 621. The threat of the action to enforce the security interest may induce a debtor to pay, the court explained, but that does not make the action an attempt to collect a debt:

> The prospect of having property repossessed may, of course, be an inducement to pay off a debt. But that inducement exists by virtue of the lien, regardless of whether foreclosure proceedings actually commence. The fear of having your car impounded may induce you to pay off a stack of accumulated parking tickets, but that doesn't make the guy with the tow truck a debt collector.

*Id.* The court recognized that "the ultimate purpose of foreclosure is the payment of money," *id.* (citing *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013)), but the FDCPA defines debt as an "obligation of a *consumer* to pay money," and foreclosure, *per se*, is not

5

designed to collect money from the consumer who owed the debt, but from whoever purchases the property the consumer had pledged as collateral. 840 F.3d at 621-22. The money that a foreclosure ultimately generates is therefore not "debt" within the meaning of the FDCPA.

The Ninth Circuit's reasoning is persuasive, especially in the context of this case. Unlike the plaintiff in *Ho*, who alleged that the defendant not only moved to foreclose on the property but also sent plaintiff misleading letters in a last-ditch attempt to induce the plaintiff to pay the debt, plaintiffs do not allege that ALO sent debt-collecting communications or otherwise attempted to collect the debt directly. Plaintiffs make no specific factual allegations of misconduct or misrepresentation at all other than generally alleging that ALO litigated the foreclosure action. But the foreclosure action was not an attempt to collect a debt, so the FDCPA does not apply, regardless of Mr. Hahn's bankruptcy.

Even if it goes too far to hold generally that foreclosure is not an attempt to collect a debt without an associated attempt to collect money, the particular foreclosure proceeding challenged here was not an attempt to collect a debt from *Mr.* Hahn, so it cannot have been an unfair or deceptive attempt to evade the automatic stay imposed by Mr. Hahn's bankruptcy. ALO explains that it was always Ms. Hahn, not Mr. Hahn, who owned the Mazon property. She had purchased the property herself before she was married, and she was the only mortgagor named in the mortgage documents. True, the Complaint for Foreclosure named not only Ms. Hahn but also Mr. Hahn as defendants, but ALO argues that that was merely a formality, in case Mr. Hahn turned out to have some equitable interest as a spouse of the mortgagor and resident of the property, but defendants never actually sought any relief against Mr. Hahn, and there is no indication that he actually had any interest in the property.

Additionally, ALO argues that the fact that Ms. Hahn purportedly quitclaimed some interest in the Mazon property to Mr. Hahn in September 2015 does not aid plaintiffs in arguing that Mr. Hahn's bankruptcy automatically stayed the foreclosure action. At the time of the purported transfer, ALO argues, Ms. Hahn's bankruptcy case had not been dismissed, she did not seek approval for the transfer in the bankruptcy court, and her purported transfer of an interest in property that was part of her bankruptcy estate was plainly improper. Plaintiffs suggest that defendants should have made this argument in Mr. Hahn's bankruptcy if their position is that, contrary to his own claims in that case, Mr. Hahn had no valid interest in the Mazon property; it was improper to simply ignore the issue and proceed with the foreclosure as if defendants had no notice of what was happening in Mr. Hahn's bankruptcy proceeding. But ALO says the same about plaintiffs: if the foreclosure proceeding should have been automatically stayed based on Mr. Hahn's bankruptcy, plaintiffs should have raised the issue in the foreclosure proceeding themselves.

Ultimately, the Court agrees with ALO that plaintiffs have not alleged sufficient facts to rely on the purported quitclaim transfer to support their FDCPA claim, and based on the current complaint, it does not matter who should have raised it when. Plaintiffs have not even attempted to establish that the transfer was valid or to substantively demonstrate that Mr. Hahn ever had any legitimate interest in the Mazon property. They do not dispute that the Illinois state court concluded in February 2016 that Mr. Hahn had no such interest, and they present no authority or argument suggesting that the state court was wrong in that respect.[3] They simply argue that ALO violated the FDCPA by litigating the foreclosure case, rather than halting it while Mr. Hahn's bankruptcy was in progress. But if Mr. Hahn had no interest in the Mazon property, then

---

[3] It would be improper to do so in any case; as defendants correctly explain, the *Rooker-Feldman* doctrine teaches that this Court has no power to review state-court judgments. *See Harold v. Steel*, 773 F.3d 884, 885-86 (7th Cir. 2014).

7

the Court fails to see what was false, deceptive or misleading about ALO's efforts to foreclose on that property; plaintiffs do not explain why Mr. Hahn's bankruptcy should have stayed an action to foreclose on property he did not actually own.

If ALO had sought a deficiency judgment against Mr. Hahn, the Court recognizes that it might view plaintiffs' claim differently because, under those circumstances, ALO might have been attempting to collect a debt. *Cf. Ho*, 840 F.3d at 621 (reasoning that nonjudicial foreclosure under California law was not debt collection in part because "California law does not allow for a deficiency judgment"). But plaintiffs do not allege that ALO sought any money or any other relief against Mr. Hahn at any point; the Complaint for Foreclosure specifically says that any deficiency judgment would be sought, if at all, only against "Heather Johnson," *i.e.* Ms. Hahn.

Plaintiffs do not state a valid FDCPA claim against ALO for its efforts to foreclose on the Mazon property because the foreclosure action was not an attempt to collect a "debt" to which the FDCPA applies. Even if it was an attempt to collect a debt, it was not an attempt to collect a debt from Mr. Hahn, so ALO did nothing unfair, false, deceptive or misleading in proceeding with the foreclosure action while Mr. Hahn's bankruptcy was pending. Plaintiffs' FDCPA claim fails, and Count I is dismissed.

## II. ICFA CLAIM AGAINST WELLS FARGO

The Illinois Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). Plaintiffs claim that Wells Fargo engaged in unfair and deceptive conduct in violation of the ICFA by litigating the foreclosure action after Mr. Hahn filed his bankruptcy petition. Wells

Fargo moves to dismiss plaintiffs' ICFA claim, arguing that it is preempted by the Bankruptcy Code and that plaintiffs fail to state a claim under the ICFA.

Another judge of this district, Judge Leinenweber, has recently addressed ICFA preemption in an almost identical context. In *Bednar v. Pierce & Associates, P.C.*, No. 16 C 6638, 2016 WL 6647944, at *2–3 (N.D. Ill. Nov. 10, 2016), Judge Leinenweber explained that, as numerous courts have held, "a state law claim, including an ICFA claim, is preempted by the Bankruptcy Code when the claim would not exist but for some violation of the Code[,] . . . particularly . . . when the Bankruptcy Code itself provides a remedy for such a violation." *Id.* (citing, *inter alia*, *MSR Expl., Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913-16 (9th Cir. 1996), *Cox v. Zale Delaware,* No. 97 C 4464, 1998 U.S. Dist. LEXIS 10707, 1998 WL 397841 (N.D. Ill. July 9, 1998) and *Knox v. Sunstar Acceptance Corp. (In re Knox),* 237 B.R. 687, 702 (Bankr. N.D. Ill. 1999)).[4] In this case, as in *Bednar*, "the alleged misconduct" is seeking a judgment in a foreclosure action, which is "allegedly unlawful because it violated the Bankruptcy Code's automatic stay provision." *Bednar*, 2016 WL 6647944, at *3. However, like the plaintiff in *Bednar*, plaintiffs here "did not avail [themselves] of the remedy available to [them] under the Bankruptcy Code to punish such misconduct." The Bankruptcy Code expressly provides a remedy for violation of the automatic stay at 11 U.S.C. § 362(k), which states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Judge Leinenweber held that "[t]o allow Plaintiff to bring his claim now would pile

---

[4] Plaintiffs claim that the analysis of these cases is outdated in light of *Randolph v. IMBS, Inc.,* 368 F.3d 726 (7th Cir. 2004), but as Judge Leinenweber explained, that case is distinguishable because it dealt not with whether the Bankruptcy Code preempted state-law claims but with whether it precluded other federal statutes such as the FDCPA.

on [an] additional state-law deterrent that is improper given the comprehensive regulations provided by the bankruptcy system." *Bednar*, 2016 WL 6647944, at *3.

There is nothing to distinguish this case from *Bednar*, and this Court agrees with Judge Leinenweber's reasoning. The Bankruptcy Code preempts plaintiff's ICFA claim. Any claim based on a purported violation of the automatic stay imposed by Mr. Hahn's bankruptcy should be brought in the bankruptcy court.

But even if plaintiffs' claim is not preempted, they fail to state a claim because they do not allege any unfair or deceptive conduct. They do not substantively dispute either that the state court found that Mr. Hahn had no interest in the Mazon property or that the state court's finding was correct because Ms. Hahn's purported quitclaim transfer of the Mazon property while her bankruptcy was pending was invalid. The best plaintiffs can muster is to argue that defendants are precluded from disputing Mr. Hahn's interest in the property because his Chapter 13 plan has already been confirmed. But it does not follow from the fact that defendants did not object to Mr. Hahn's Chapter 13 plan they must have known or should have known that he had some legitimate interest in the Mazon property. The authority plaintiffs cite supports no such reasoning. In both *in re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000), and *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010), the dispute merely concerned the precise terms of the discharge based on the terms of the plan; in neither case was there any doubt about the debtor's ownership of any particular property or whether the debtor was the one who had actually incurred any particular debt.

The Court agrees with Wells Fargo that *Bartlett v. Fifth Third Bank*, 619 F. App'x 525, 528-29 (7th Cir. Ind. 2015), is closer to the facts of this case. In *Bartlett*, as in this case, a bank held a mortgage on a property on which bankruptcy debtors lived, but which they did not own.

*Id*. at 526-27.  The debtors claimed to own the property in their Chapter 13 bankruptcy proceedings.  *Id*. at 527.  The bank received notice of the bankruptcy proceeding, but it did not participate.  *Id*.  Years after the debtors' Chapter 13 plan was confirmed, the bank moved for relief from the automatic stay (apparently only realizing at that point that the property had been incorporated into the bankruptcy plan).  *Id*.  The debtors objected, arguing that the bank had received timely notice of their bankruptcy and should have objected to the plan prior to confirmation if it believed the property should not have been excluded.  *Id*.  The Seventh Circuit ruled that while the bank technically had notice of the debtors' bankruptcy, it did not have "adequate notice" because "it did not possess collateral in the [debtors'] name; [rather,] it had a mortgage on a property owned by . . . a corporation that was not a party to the bankruptcy proceeding."  *Id*. at 528-29.  Notice of the debtors' bankruptcy was not "adequate notice" because the bank had no way to connect the property in which it had an interest, which was *not* legally owned by the debtors, to the debtors' bankruptcy.  Under these circumstances, the bank was not bound by the confirmation of the Chapter 13 plan years earlier.  *Id*.  *Bartlett* is an unpublished decision that carries no more weight than the force of its reasoning demands, but the Court finds its reasoning persuasive.  This case presents essentially the same situation, and the Court sees no reason why a different result is warranted.

Thus, plaintiffs' preclusion argument fails, and they have not otherwise demonstrated why their ICFA claim should survive defendants' motion to dismiss.  Plaintiffs are unable to point to any facts on which the Court might base a reasonable inference that Mr. Hahn had any interest in the Mazon property, or that defendants should have known about it if he did.  If they had no reason to think he had any interest in the Mazon property, then there was no reason that his bankruptcy should have automatically stayed the foreclosure action, and defendants did

11

nothing unfair or deceptive by continuing to litigate the foreclosure action. Plaintiffs are unable to state a claim under the ICFA, and Count II is dismissed.

Defendants make some additional arguments, but the Court need not reach them. Because plaintiffs have not plausibly alleged that Mr. Hahn had any interest in the Mazon property, plaintiffs are unable to state a claim for any sort of unfair or deceptive conduct against defendants based only on defendants' prosecution of the foreclosure action after Mr. Hahn filed his bankruptcy petition. Defendants ask for a dismissal with prejudice, but the dismissal will be without prejudice. It appears unlikely that plaintiffs will be able to state a claim against defendants, but at this point the Court is unable to say with certainty that any amendment would be futile, as there may be facts left out of plaintiffs' complaint that show their claims in a different light.

## CONCLUSION

For the reasons set forth above, the Court grants defendants' motions to dismiss [21] and [27]. Plaintiffs may file an amended complaint by April 28, 2017, if they can do so in compliance with the Rules of Civil Procedure.

**SO ORDERED.**                            **ENTERED:**

3/31/17

                                               **JORGE L. ALONSO**
                                               **United States District Judge**